**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-01373-CNS-STV

ADEIA TECHNOLOGIES INC.;
ADEIA MEDIA HOLDINGS INC.; and
ADEIA MEDIA SOLUTIONS INC.,

Plaintiffs,

v.

DISH NETWORK CORPORATION;
DISH NETWORK LLC;
DISH MEDIA SALES LLC;
DISH DBS CORPORATION;
ECHOSTAR CORPORATION;
SLING TV LLC; and
SLING TV HOLDING LLC,

Defendants.

---

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 2

A. Rule 12(b)(6) ..... 2

B. Patent Eligibility Under 35 U.S.C. § 101 ..... 2

III. ARGUMENT ..... 4

A. All Asserted Claims Are Patent Ineligible Under 35 U.S.C. § 101. ..... 4

1. The ’927 Patent Claims the Abstract Idea of Revealing Truncated Content in a Scrollable Grid by Enlarging a Grid Cell and Animating the Reveal During Scrolling (Count I). ..... 4

a) Step One: Claim 16 is directed to the abstract idea of revealing truncated content in a scrollable grid by enlarging a grid cell and animating the reveal during scrolling. ..... 5

b) Step Two: Stock hardware and an aesthetic preference supply no inventive concept. ..... 7

c) Claim 16 is representative, and all claims of the ’927 Patent fall together. ..... 8

2. The ’758 Patent Claims the Abstract Idea of Overlaying a Message on Displayed Content (Count IV). ..... 9

a) Step One: Claim 11 is directed to the abstract idea of overlaying a message on displayed content. ..... 10

b) Step Two: Generic components performing their ordinary functions supply no inventive concept. ..... 11

c) Claim 11 is representative, and all claims of the ’758 Patent fall together. ..... 12

3. The ’049 Patent Claims the Abstract Idea of Responding to a Request by Determining a Second Domain and Transmitting a File with Interspersed Data Identifying Two Domains Hosting Video Segments (Count V). ..... 13

a) Step One: Claim 15 is directed to the abstract idea of responding to a request by determining a second domain and transmitting a file with interspersed data identifying two domains hosting video segments. ..... 14

b) Step Two: The claims add only generic components and the abstract idea itself. ..... 15

c) Claim 15 is representative, and all claims of the ’049 Patent fall together. ..... 17

4. The ’013 Patent Claims the Abstract Idea of Compiling, on Request, a List Identifying What to Play Next, Including Determining Whether to Insert Other Content (Count III). ..... 18

a) Step One: Claim 8 is directed to the abstract idea of compiling, on request, a list of content to play next, including determining whether to insert other content. 19

b) Step Two: The claims do not capture the benefits asserted in the Complaint. 20

c) Claim 8 is representative, and all claims of the ’013 Patent fall together. 21

5. The ’546 Patent Claims the Abstract Idea of Controlling Access to Streaming Content Based on an Account’s Active Session (Count II). 22

a) Step One: Claim 8 is directed to the abstract idea of controlling access to streaming content based on an account’s active session. 23

b) Step Two: Generic components performing generic functions supply no inventive concept. 24

c) Claim 8 is representative, and all claims of the ’546 Patent fall together. 25

6. No Claim-Construction or Factual Dispute Precludes Resolution of Any Patent Now. 26

IV. CONCLUSION 27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ........ 19

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ........ 8, 11, 12, 24, 26

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
97 F.4th 1371 (Fed. Cir. 2024) ........ 3

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........ 1, 2, 3, 4, 12, 17, 24, 25

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016) ........ 6, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Berkeley*IEOR v. W.W. Grainger, Inc.*,
Nos. 2024-2353, 2025-1009, 2026 WL 2820069 (Fed. Cir. Sept. 21, 2026) ........ 21

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........ 4, 9, 12, 18, 22, 26, 27

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ........ 1, 10, 14, 19

*Bot M8 LLC v. Sony Corp. of Am.*,
465 F. Supp. 3d 1013 (N.D. Cal. 2020),
*aff'd in part, rev'd in part on other grounds*, 4 F.4th 1342 (Fed. Cir. 2021) ........ 10

*Brereton v. Bountiful City Corp.*,
434 F.3d 1213 (10th Cir. 2006) ........ 27

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ........ 3

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024)........................................................................ 6, 7

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................................7, 8, 10, 11, 15, 17, 20, 25, 26

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)........................................................................... 14

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)............................................................... 7, 11, 16, 25

*Checksum Ventures, LLC v. Dell Inc.*,
412 F. Supp. 3d 906 (N.D. Ill. 2019) ................................................................... 26

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014)................................................ 3, 4, 9, 12, 18, 22, 26

*Content Square SAS v. Decibel Insight Ltd.*,
552 F. Supp. 3d 165 (D. Mass. 2021)................................................................... 7

*Coop. Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022).............................................................................. 16

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018)............................................................................. 6

*Customedia Techs, LLC v. DISH Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)................................................................... 2, 8, 22

*Data Engine Techs. LLC v. Google LLC*,
906 F.3d 999 (Fed. Cir. 2018)............................................................................... 6

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016).....................................10, 12, 14, 15, 17, 21, 22, 24

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)............................................................... 3, 15, 24

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
955 F.3d 1317 (Fed. Cir. 2020)..................................................................... 23, 25

*Fitbit Inc. v. AliphCom*,
No. 16-cv-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017) .................... 19, 20

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026)........................................................................ 19

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023)........................................................................... 21

*IBM Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022)................................................................... 5, 8, 11

*In re TLI Commc'ns LLC Pat. Litig.*,
823 F.3d 607 (Fed. Cir. 2016).................................................................. 7, 11, 15

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)..................................................................... 17, 22

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018)......................................................................... 6, 10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)................................................................................ 8

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024)............................................................................... 6

*OIP Techs., Inc. v. Amazon.com, Inc.*,
788 F.3d 1359 (Fed. Cir. 2015)................................................................................ 3

*Piranha Media Distrib. LLC v. Hulu, LLC*,
No. 2025-1038, 2026 WL 3072347 (Fed. Cir. Oct. 14, 2026) ...................... 20, 23, 27

*Plotagraph, Inc. v. Lightricks, Ltd.*,
No. 2023-1048, 2024 WL 223185 (Fed. Cir. Jan. 22, 2024) ..................................... 6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
696 F. App'x 1014 (Fed. Cir. 2017)........................................................... 23, 25, 26

*Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*,
No. 17-cv-02097-RBJ, 2021 WL 3888263 (D. Colo. July 31, 2021),
*aff'd*, No. 2021-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023)........................... 2

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
65 F.4th 698 (Fed. Cir. 2023)................................................................................ 14, 27

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)................................................................. 3, 8, 11, 21

*Savvy Dog Sys., LLC v. Pa. Coin, LLC*,
No. 2023-1073, 2024 WL 1208980 (Fed. Cir. Mar. 21, 2024)....................................6

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
873 F.3d 905 (Fed. Cir. 2017)....................................3, 25, 26

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....................................3, 8, 16, 21, 25, 26

*Smart Sys. Innovations, LLC v. Chi. Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017)....................................24

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019)....................................5, 10

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023)....................................27

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....................................6, 14, 16, 17, 19, 20, 22

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)....................................20

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021)....................................23, 24, 26

*US Pat. No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026),
*cert. denied*, No. 26-236, 2026 WL 2976973 (U.S. Oct. 5, 2026) ....................................20

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021)....................................11

## I. INTRODUCTION

All of Adeia's Asserted Patents claim abstract ideas about presenting information and delivering video rather than technological inventions:

- The '927 Patent claims revealing truncated content in a scrollable grid by enlarging a grid cell and animating the reveal during scrolling;
- The '758 Patent claims overlaying a message on displayed content;
- The '049 Patent claims identifying an interspersing pattern of URLs;
- The '013 Patent claims compiling, on request, a list of what to play next, including whether to insert other content; and
- The '546 Patent claims controlling access to streaming content based on an account's active session.

Each claim bears the "well-settled indicators of abstractness" catalogued in *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355-57 (Fed. Cir. 2024)—generic steps, result-focused functional language, close analogues in precedent, longstanding non-technological practice, and no specific technological improvement—and is a paradigm of ineligibility under *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), and its progeny. Each recites a result in purely functional terms—e.g., *receive* a request, *determine* what to provide, *display* or *transmit* the result—without explaining *how*. And these functions are performed by generic components: a "processor," "memory," a "network interface," a "frame buffer," a "touch-sensitive display device."[1] This District has

[1]Unless otherwise noted, all emphasis is added and internal quotation marks, citations, and alterations are omitted.

held similar claims asserted against Sling and DISH entities ineligible under § 101, *Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, No. 17-cv-02097-RBJ, 2021 WL 3888263, at *6-7 (D. Colo. July 31, 2021) (summary judgment), *aff'd*, No. 2021-2268, 2023 WL 3373583 (Fed. Cir. May 11, 2023). Similarly, the Federal Circuit held claims for computerized delivery of targeted advertising—the very concept underlying the '013 Patent—abstract and ineligible in *Customedia Technologies, LLC v. DISH Network Corp.*, 951 F.3d 1359, 1362-65 (Fed. Cir. 2020).

All five Counts rest on ineligible claims, and the Court should dismiss the Complaint with prejudice.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and legal conclusions are "not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

### B. Patent Eligibility Under 35 U.S.C. § 101

Abstract ideas are not patent eligible. *Alice*, 573 U.S. at 216. Courts apply a two-step test: first, the Court determines whether a claim's "character as a whole," considered in light of the specification, is "directed to" an abstract idea; and second, if so, whether the claim elements, "both individually and as an ordered combination," supply an "inventive concept"—"an element or combination of elements that is sufficient to ensure

that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id.* at 217-18 (cleaned up). For computer-implemented inventions, Step One asks whether the claims focus on an "improvement in computer capabilities" or on an abstract idea "for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). "[M]erely requir[ing] generic computer implementation fail[s] to transform that abstract idea into a patent-eligible invention," *Alice*, 573 U.S. at 221, and "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible," *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

Eligibility is a question of law that "may be, and frequently has been," resolved on a Rule 12(b)(6) motion. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). The Court need not accept conclusory eligibility allegations or allegations contradicted by the asserted patents. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912-13 (Fed. Cir. 2017); *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020). Allegations "wholly divorced" from the claims or specification "cannot defeat a motion to dismiss." *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1380 (Fed. Cir. 2024); *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019) (courts need not accept "legal conclusions ... couched as factual allegations," including "characterization of its inventions as 'technical innovations'"). And the Court may treat a claim as representative where the remaining claims are "substantially similar and linked to the same abstract idea." *Content Extraction*

*& Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

## III. ARGUMENT

### A. All Asserted Claims Are Patent Ineligible Under 35 U.S.C. § 101.

Each Asserted Patent claims an abstract idea applied to elements of television and internet video—program guides, frame buffers, segments, manifests, user accounts—that each patent's specification describes as what "typically" existed. Each claim also recites the result itself, not a particular technique for achieving it. Under *Alice*, none is patent-eligible.

#### 1. The '927 Patent Claims the Abstract Idea of Revealing Truncated Content in a Scrollable Grid by Enlarging a Grid Cell and Animating the Reveal During Scrolling (Count I).

The '927 Patent, titled "Revealing of truncated content on scrollable grid," concerns a familiar interface: the electronic program guide. The specification acknowledges that displaying information in "a grid of cells" organized in rows and columns—including "non-uniform" grids such as electronic program guides—was conventional, ECF No. 1-1 ("'927 Patent"), 1:6-16, 2:25-52, as was truncating content too large for its cell, *id.*, 1:16-18, and scrolling the grid in response to user input, *id.*, 3:4-23. The patent's asserted contribution is enlarging a cell during scrolling and "animat[ing] a revealing" of hidden text. Sole asserted and representative claim 16 recites:

> A method of presenting a scrollable non-uniform grid of content in the form of a media programming guide on a touch-sensitive display device and updating content of a cell of the non-uniform grid during scrolling of the grid, the method comprising:

> **displaying** on the touch-sensitive display device the cell of the non-uniform grid at a first, smaller size;
>
> **displaying** in the cell a content item that is truncated based upon the first, smaller size of the cell;
>
> **receiving** a request to scroll the non-uniform grid via a user's finger interacting with the touch-sensitive display device;
>
> **horizontally scrolling** the non-uniform grid ... in response to a location of the user's finger ...;
>
> during scrolling, **horizontally increasing** a size of the cell to a second, larger size; and
>
> during horizontally increasing the size of the cell, **animating a revealing** of a truncated portion of the content item as the size of the cell increases from the first, smaller size to the second, larger size.

'927 Patent, cl. 16.[2]

#### a) *Step One: Claim 16 is directed to the abstract idea of revealing truncated content in a scrollable grid by enlarging a grid cell and animating the reveal during scrolling.*

Claim 16 recites displaying a truncated item in a cell, scrolling horizontally, "horizontally increasing" the cell's size, and "animating" the reveal. The Federal Circuit has repeatedly held that selecting, arranging, sizing, and presenting information—however useful or attractive the presentation—is abstract. *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377-79 (Fed. Cir. 2022) (affirming as abstract claims for coordinated selection and re-display of on-screen map data; presenting data visually is not an improvement specific to computers); *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092-94 (Fed. Cir. 2019) (graphical trading interfaces that help users process information

[2] The Asserted Patents' claims are provided in Exhibit 2.

more quickly are not improvements to computer functionality); *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1240-41 (Fed. Cir. 2016) (generating and displaying menus abstract); *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1344-45 (Fed. Cir. 2018). Animating elements "to create the appearance of movement" is "clearly an abstract idea that is directly tethered to the claim language." *Plotagraph, Inc. v. Lightricks, Ltd.*, No. 2023-1048, 2024 WL 223185, at *3 (Fed. Cir. Jan. 22, 2024); *see also Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368-71 (Fed. Cir. 2024) (electronic program guide claims abstract). Where, as here, "nothing in the claim or the specification describes a new technological way of displaying[,]" the claims are directed to an abstract idea. *Savvy Dog Sys., LLC v. Pa. Coin, LLC*, No. 2023-1073, 2024 WL 1208980, at *4 (Fed. Cir. Mar. 21, 2024).

The claim is also result-oriented throughout: it does not say how the device increases the cell's size or animates the reveal—only that the cell gets bigger and additional text appears. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017) ("result-based functional language" is abstract). Claim 16 requires only that the reveal occurs "during" the cell's growth—timing, not technique. Claims that "consist solely of result-orientated, functional language" are abstract. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1292 (Fed. Cir. 2024).

Claim 16 is unlike the claims in both *Core Wireless*—reciting "a particular manner of summarizing and presenting information"—and the claims in *Data Engine*—reciting "a specific method for navigating" spreadsheets. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018); *Data Engine Techs. LLC v. Google*

*LLC*, 906 F.3d 999, 1007-08 (Fed. Cir. 2018). This is because Claim 16 recites no particular way of enlarging or animating within the admittedly conventional "non-uniform grid." '927 Patent, 1:6-16. A user interface alone is not "a specific, technological solution to a technological problem," *Broadband iTV*, 113 F.4th at 1368, and even improving how data is displayed "is not enough." *Content Square SAS v. Decibel Insight Ltd.*, 552 F. Supp. 3d 165, 177 (D. Mass. 2021). While the Complaint alleges the claim language "specifies how the device's rendering pipeline processes scrolling," Compl. ¶58, neither the claims nor the specification mentions a rendering pipeline. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766, 769 (Fed. Cir. 2019) (finding "§ 101 inquiry must focus on the language of the Asserted Claims").

***b) Step Two: Stock hardware and an aesthetic preference supply no inventive concept.***

The displaying, enlarging, and animating steps constitute the abstract idea and supply no inventive concept. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). The claims add only a "touch-sensitive display device" (claim 16), a "computing device" with "a display device; a processor; and memory" (claim 1), or a "display device" (claim 10). The specification discloses performing these steps on generic hardware like PDAs, wireless telephones, and computers, '927 Patent, 5:18-19, which cannot "transform the abstract idea into a patent-eligible invention." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 613-15 (Fed. Cir. 2016). Displaying grid cells, truncating text, and scrolling by touch are each admittedly conventional. '927 Patent, 1:6-18, 3:4-23. The specification frames the "animat[ion]" limitation as an aesthetic result, not a mechanism: avoiding "a sudden, discontinuous" appearance to achieve "a smoother user

experience." *Id.*, 3:45-50. Applying an abstract idea on stock hardware to improve a user's experience, without further specificity, is an improvement to the *idea*, not the computer. *IBM*, 50 F.4th at 1382-83; *Customedia*, 951 F.3d at 1365; *BSG*, 899 F.3d at 1290-91; Compl. ¶¶58, 61. And unlike the specific rules for automating animation at issue in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016), the '927 Patent discloses no code, algorithm, or technique for performing the claimed animation—only the result. The Complaint's conclusory assertion that the ordered combination "was not well-understood, routine, or conventional," Compl. ¶58, cannot defeat dismissal. *Simio*, 983 F.3d at 1365.

#### ***c) Claim 16 is representative, and all claims of the '927 Patent fall together.***

Device claims 1 and 10 recite the same display-scroll-enlarge-animate sequence through generic components as claim 16, and the dependent claims add only presentation refinements of that same abstract idea. For example, claim 1's "transverse" limitation is a result without a technique and merely reflects another aesthetic choice. '927 Patent, 3:36-50; *SAP*, 898 F.3d at 1163; *BSG*, 899 F.3d at 1287, 1290-91 (neither applying "an abstract idea in a narrow way" (Step One) nor "narrowing or reformulating an abstract idea" (Step Two) renders it eligible). Claims 3-4, 12-13, and 17-18 specify only whether the cell enlarges horizontally or vertically; claims 2, 9, and 11 specify a field-of-use limitation in the "non-uniform grid" or "media programming guide", *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258-59 (Fed. Cir. 2016); claims 5-7, 14, and 20 address only animation timing ("upon completion," "continuously," or "at a rate"), *BSG*, 899 F.3d at 1290-91; and claims 8, 15, and 19 recite that scrolling concludes with

a "snapping animation" but lack any specific technique. Each dependent claim is directed to a result (text becoming visible as a cell grows), "dissociated from any method by which [it] is accomplished," and therefore "not directed to patent-eligible subject matter" for the same reasons as claim 16. *Ameranth*, 842 F.3d at 1244. All claims are thus "substantially similar and linked to the same abstract idea," *Content Extraction*, 776 F.3d at 1348, and Adeia—charting only claim 16—identifies no distinctive significance in any other claims or limitations, *Berkheimer*, 881 F.3d at 1365.

#### 2. The '758 Patent Claims the Abstract Idea of Overlaying a Message on Displayed Content (Count IV).

The '758 Patent, titled "Multifunction multimedia device," claims displaying a message (e.g., text or an image) on top of playing video. Sole asserted and representative claim 11 recites in full, "A method comprising:

> **receiving** media content from a media source;
>
> **loading** one or more uncompressed high-definition frames of the media content into a frame buffer;
>
> **receiving**, from a remote source and concurrently with receiving the media content, a message;
>
> **writing** information associated with the message into the frame buffer to overlay at least a portion of the one or more uncompressed high-definition frames loaded into the frame buffer;
>
> **sending** the media content to a display device for display of the media content with the information associated with the message overlaying the media content."

ECF No. 1-4 ("'758 Patent"), cl. 11.

#### a) *Step One: Claim 11 is directed to the abstract idea of overlaying a message on displayed content.*

Displaying two things at once—a message over a program—is not an invention of the digital age. Broadcasters have superimposed news tickers, weather banners, and station logos over programming since the dawn of television, and newspapers have long printed banners across photographs. "[D]isplay of two sets of information on a generic display device is abstract," *Trading Techs.*, 921 F.3d at 1093, and manipulating information, even in a particular context, is still abstract absent a particular technique for doing so. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) ("gathering," "analyzing," and "displaying" information is abstract). And claim 11 recites that practice as five generic functions—receiving, loading, receiving, writing, and sending—each stated as "a result, not a means to achieve it" and therefore abstract. *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020), *aff'd in part, rev'd in part on other grounds*, 4 F.4th 1342, 1357-58 (Fed. Cir. 2021). Adeia concedes the "implementation details" are in the specification, not the claim. Compl. ¶91. In *Interval Licensing*, claims for displaying secondary content alongside a user's primary content were directed to an abstract idea ("providing information to a person without interfering with the person's primary activity") and were ineligible as reciting a desired result without limiting how to produce it. 896 F.3d at 1344-47; *see also Beteiro*, 104 F.4th at 1355-56.

Neither can technical-sounding vocabulary—"uncompressed high-definition frames" and "frame buffer"—change the claim's focus or render it less abstract. *BSG*, 899 F.3d at 1287. "Uncompressed" and "high-definition" describe the information manipulated, not a data-manipulation technique. *Elec. Power*, 830 F.3d at 1353. For

decades, displays have typically operated by rendering data written into a buffer—memory for storing display information—and the specification confirms the buffer receives (1) "media content," followed by (2) "additional content" for the overlay. '758 Patent, 11:54-59; *see id.*, 9:40-45. Reciting a standard rendering mechanism merely confines the abstract idea to a particular technological environment. *TLI*, 823 F.3d at 612-13; *Affinity Labs*, 838 F.3d at 1258-59.

***b) Step Two: Generic components performing their ordinary functions supply no inventive concept.***

Overlaying is the abstract idea and cannot supply the inventive concept. *BSG*, 899 F.3d at 1290. Method claim 11 recites no hardware beyond "a display device." The apparatus claims also recite generic hardware, e.g., claim 1 recites five black box "subsystem[s], implemented at least partially in hardware," each defined entirely by its function, and the specification describes the computing platform in similarly generic terms. '758 Patent, 22:60-23:3, 23:36-39; *IBM*, 50 F.4th at 1382 (describing "the functions of the abstract idea itself, without particularity[,]" is "simply not enough under step two"); *Yu v. Apple Inc.*, 1 F.4th 1040, 1043-45 (Fed. Cir. 2021) (finding claims reciting conventional components in their ordinary configuration ineligible notwithstanding hardware recitations). The Complaint's touted "integrated, frame-buffer-level mechanism to composite external messages during playback" fares no better. Compl. ¶88. It addresses novelty, not eligibility, *SAP*, 898 F.3d at 1163, and defends a claim never written: claim 11 requires no "integration" beyond writing into a buffer, the admittedly-standard rendering mechanism. '758 Patent, 11:54-59; *see also ChargePoint*, 920 F.3d at 769-70.

***c) Claim 11 is representative, and all claims of the ’758 Patent fall together.***

Apparatus claim 1 (functional “subsystems”) and storage-medium claim 21 recite the same five functions as method claim 11, and *Alice* forecloses treating these differing statutory classes differently. 573 U.S. at 226-27. The dependent claims add only conventional data-gathering, data-source, and field-of-use limitations that are themselves abstract. For example, they recite drawing content from “multiple media sources” (claims 2, 12, 22), “deriving a fingerprint” from buffered frames (claims 3, 13, 23); receiving and storing user “audio input” (claims 4, 14, 24); presenting text based on an audio file message (claims 10, 20, 30); synchronizing a second display (claims 5, 15, 25); and “uploading” “to a web server” (claims 6, 16, 26)—each a result without a particular technique amounting to abstract ideas of collecting, manipulating, and presenting information. *Elec. Power*, 830 F.3d at 1353-55. And requiring “consecutive frames” (claims 7, 17, 27), presentation during “a commercial break” (claims 8, 18, 28), or “a social networking website” source (claims 9, 19, 29) merely confines the same overlay idea to a particular source or context—the paradigmatic (and ineligible) field-of-use limitation. *Affinity Labs*, 838 F.3d at 1258-59. All claims are thus “substantially similar and linked to the same abstract idea,” *Content Extraction*, 776 F.3d at 1348, and Adeia—charting only claim 11—identifies no distinctive significance in any other claims or limitations, *Berkheimer*, 881 F.3d at 1365.

### 3. The ’049 Patent Claims the Abstract Idea of Responding to a Request by Determining a Second Domain and Transmitting a File with Interspersed Data Identifying Two Domains Hosting Video Segments (Count V).

The ’049 Patent concerns “manifest” files—playlists that adaptive-streaming video players download to learn the locations where video segments may be retrieved. The specification acknowledges that video is “typically” “encoded into multiple separate files,” each “encoded at a different reference bitrate.” ECF No. 1-5 (“’049 Patent”), 1:27-46. It further acknowledges that manifest files were “typically” used to provide Uniform Resource Locators (URLs) that enable adaptive-streaming video players to locate these video segments. *Id.*, 2:23-50. The patent’s claimed contribution is data identifying an interspersing pattern of URLs “hosted by a first domain” and “a second domain.” Sole asserted and representative claim 15 recites a “system” comprising a “processing unit” and “memory” storing instructions that cause the system to:

> **receive** ... a request for data relating to an interspersed manifest file to be created for an adaptive streaming video, wherein the adaptive streaming video is encoded at a plurality of reference bitrates, and wherein a plurality of video segment files corresponding to the adaptive streaming video is stored for each of the plurality of reference bitrates;
>
> **determine** a second domain configured to serve a second subset of video segment files corresponding to a second subset of URLs, wherein the interspersed manifest file to be created includes a first subset of URLs hosted by a first domain which are interspersed among the second subset of URLs hosted by the second domain; and
>
> **transmit** ... data identifying the second domain configured to serve the second subset of video segment files.

*Id.*, cl. 15.

***a) Step One: Claim 15 is directed to the abstract idea of responding to a request by determining a second domain and transmitting a file with interspersed data identifying two domains hosting video segments.***

Stripped of patent jargon, claim 15 recites three generic functions: *receive* a request for content, *determine* a second source for segments of the content, and *transmit* information identifying the second source. Receiving a request and answering it with information about where to obtain resources is not a technological invention; it is an ancient commercial practice—the distributor who identifies items for an order from a second warehouse. A "computer receiv[ing] and send[ing] information over a network—with no further specification—is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). The Federal Circuit has repeatedly held that claims reciting generic steps of receiving, determining, and transmitting information using conventional technology bear the "well-settled" hallmarks of abstractness and are "almost always" ineligible. *Beteiro*, 104 F.4th at 1355-56; *Elec. Power*, 830 F.3d at 1353-54 (collecting, organizing, and transmitting information is abstract); *Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 703 (Fed. Cir. 2023) (applying a "distribution rule" to digital content is abstract).

The claims are also quintessentially result-oriented. The claimed system "receive[s]," "determine[s]," and "transmit[s]," but nothing in claim 15—or any other claim—explains *how* these steps occur. In *Two-Way Media*, the court held materially similar streaming claims abstract because they "require[d] the functional results" of converting, routing, controlling, and monitoring data streams "but [did] not sufficiently describe how to achieve these results in a non-abstract way." 874 F.3d at 1337. So too

here. The Complaint touts alleged benefits—delivery resilience, faster startup, load allocation—flowing from the *idea* of using two sources rather than one, but not from any claimed mechanism. Compl. ¶98. That "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible." *Elec. Power*, 830 F.3d at 1356.

Nor are the claims directed to an improvement in computer functionality under *Enfish*, 822 F.3d at 1335-36. Claim 15 does not even require "generating" or "serving" a manifest—without saying how, it refers only to a manifest "to be created" and requires only transmitting "data identifying the second domain." *Compare* '049 Patent, 1:23-42 *with* Compl. ¶95. The player issues the same requests, the segments are encoded and stored the same way, and the network operates exactly as before; only the *list of addresses* differs. Reciting a particular technological environment—adaptive streaming—does not make an information-arrangement claim any less abstract. *TLI*, 823 F.3d at 612-13.

#### ***b) Step Two: The claims add only generic components and the abstract idea itself.***

The claim's hardware is generic on its face: a "processing unit including one or more processors" and "memory" storing "instructions." '049 Patent, cl. 15. The streaming-specific elements—multi-bitrate encodings, segment files, manifests, domains serving content—are each described by the specification as the "typical[]" prior art practice. *Id.*, 1:27-46, 2:23-50. The only assertedly new element, an interspersed pattern of URLs identifying two domains, is part of the abstract idea and conventional. A "claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept." *BSG*, 899 F.3d at 1290. The specification admits manifests were "typically" URL

lists identifying content "typically" from "two or more service providers" or "different content providers," where it was "common" for content and ads to be served from separate infrastructure. '049 Patent, 2:38-43, 5:30-43. The ordered combination—receive, determine, transmit—is the order any request would be fulfilled on "a conventional, generic architecture." *Two-Way Media*, 874 F.3d at 1339. The Complaint paraphrases the claim language before concluding the combination "constitutes a specific technological solution," Compl. ¶¶95-100—precisely the kind of conclusory assertion that cannot defeat dismissal. *Simio*, 983 F.3d at 1365.

The Complaint also touts "distribution policies," "performance monitoring," and "dynamic control over streaming behavior during playback." Compl. ¶¶97-98. Claim 15 recites none of that—only a request received, a "second domain" determined, and identifying data transmitted. Improvement allegations divorced from what the claims recite are legally irrelevant; eligibility turns on what is claimed, not on everything the specification (or the complaint) alleges. *See ChargePoint*, 920 F.3d at 767, 769; *Simio*, 983 F.3d at 1364-65. Nor does *Cooperative Entertainment, Inc. v. Kollective Technology, Inc.*, 50 F.4th 127, 130-32 (Fed. Cir. 2022), help Adeia. The claims there recited a specific, structurally different network—a dynamic peer-to-peer network operating *outside* the content distribution network, with segmentation using trace routes—and that case's complaint pleaded concrete supporting facts. Here, the claims recite no unique structure; instead, only a second domain, conventional URLs, interspersed in a conventional file, sent over a conventional architecture. Finally, at the level of generality claimed, claim 15

would cover essentially *any identification* of more than one source to serve segments of an adaptive stream—monopolizing the idea itself.

***c) Claim 15 is representative, and all claims of the ’049 Patent fall together.***

Independent claims 1 and 8 recite the same receive/determine/transmit sequence—as a system and a method, respectively—adding only a result-oriented recitation of determining and transmitting “an interspersing pattern of [URLs]” corresponding to first and second domains, which merely restates part of the abstract idea itself. The dependent claims add nothing more than result-oriented and insignificant data-gathering and distribution rules. For example, using “attributes associated with a user device” (e.g., “access network” or “device type”) to determine and transmit a “subset of ... reference bitrates” (claims 2-4, 9-11, 16-18) is the collection and use of information that *Electric Power* holds abstract. 830 F.3d at 1353-55; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-71 (Fed. Cir. 2015) (“tailoring information” is abstract and patent ineligible). Selecting the “second domain” “based on a distribution policy ... defining a load allocation” (claims 6, 13, 19) recites a result-oriented rule, not a mechanism, *Two-Way Media*, 874 F.3d at 1337-39, and the “repeating pattern” (claims 5, 12) merely specify an interspersed pattern of URLs that *is* the abstract idea and so cannot themselves supply an inventive concept, *BSG*, 899 F.3d at 1290. Finally, generic “segment file servers” that receive and serve segment files (claims 7, 14, 20) add only conventional components performing ordinary functions. *Alice*, 573 U.S. at 225-26. All claims are thus “substantially similar and linked to the same abstract idea,” *Content*

*Extraction*, 776 F.3d at 1348, and Adeia—charting only claim 15—identifies no distinctive significance in any other claims or limitations, *Berkheimer*, 881 F.3d at 1365.

### 4. The ’013 Patent Claims the Abstract Idea of Compiling, on Request, a List Identifying What to Play Next, Including Determining Whether to Insert Other Content (Count III).

The ’013 Patent, titled “Dynamic index file creation for media streaming,” also concerns “index files”—like the ’049 Patent’s manifest files, playlists telling a media player where to obtain the next “chunks” of a program. Compl. ¶78. The patent’s specification concedes chunking media into segments, storing “where chunks may be accessed” in an index file, and delivering that file to a media player were all standard. ECF No. 1-3 (“’013 Patent”), 1:21-31. The asserted contribution is timing: the server compiles each index file when the player asks, rather than in advance. Sole asserted and representative claim 8, Compl. ¶117, recites:

> **receiving**, with the network, a request for a first index file; **determining** a first segment of media for streaming ... wherein the determination includes **determining whether to include media, other than the media file** ... and ... **determining a starting point and an ending point** ...; **generating** the requested first index file based, at least in part, on the determination ...; **providing**, with the network, the requested first index file;
>
> [repeating each step for “a second index file”] ... wherein receiving the requests for the first and second index files and providing the requested first and second index files **occur during playback** of the media file ....

’013 Patent, cl. 8.

***a) Step One: Claim 8 is directed to the abstract idea of compiling, on request, a list of content to play next, including determining whether to insert other content.***

Claim 8 recites a server that receives a request, decides what the next segment will contain and where it begins and ends, records that decision in a list, sends the list, and repeats. The Federal Circuit recently held materially indistinguishable claims—reciting a server receiving a request, generating a "page description" specifying content to be presented, and sending it back—abstract, reversing a district court that had sustained them on the pleadings. *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1066-67 (Fed. Cir. 2026). In *GoTV Streaming*, the Federal Circuit rejected the patentee's reliance on an "algorithm," an "architecture," and "specific data structures": these terms "refer simply to packages of information of a particular content," whatever their "first-blush appearance of technical specificity." *Id.* at 1066. Here, the claimed "index file" is likewise a package of information—"where chunks may be accessed," '013 Patent, 1:21-31—whose contents claim 8 defines only by result. Claim 8 does not say *how* the server decides whether to include other media, *how* starting and ending points are chosen, or *how* the index file is generated. Its "receiving," "determining," "generating," and "providing" steps are "result-focused functional language," the hallmark of an abstract idea. *Beteiro*, 104 F.4th at 1356; *Two-Way Media*, 874 F.3d at 1337; *see Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) (converting and transmitting streaming video are abstract).

Furthermore, "waiting until a particular point in time" to do something "is an old concept" and an abstract idea. *Fitbit Inc. v. AliphCom*, No. 16-cv-00118-BLF, 2017 WL

819235, at *15 (N.D. Cal. Mar. 2, 2017). Claim 8's "during playback" limitation does not change the claim's focus; it changes only *when* an abstract step occurs, not *how* servers "typically" perform it. '013 Patent, 1:21-31. Timing limitations therefore add nothing to a patent-ineligible abstract idea. *See, e.g.*, *US Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1378 (Fed. Cir. 2026), *cert. denied*, No. 26-236, 2026 WL 2976973 (U.S. Oct. 5, 2026). Nor does the claim's only content limitation—including "media, other than the media file"—supply a technological focus. It places no limit on what that media is or why it is chosen, and inserting other content, such as advertising, into a program is itself abstract. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714-16 (Fed. Cir. 2014); *Piranha Media Distrib. LLC v. Hulu, LLC*, No. 2025-1038, 2026 WL 3072347, at *5-6 (Fed. Cir. Oct. 14, 2026) (claims reciting sequencing advertisements into a "content stream" at "insertion points" are abstract). In fact, the claim requires only "determining whether" to include other media and therefore covers a server that *never inserts anything*. '013 Patent, 17:7-19, 23-35.

***b) Step Two: The claims do not capture the benefits asserted in the Complaint.***

Every component in claim 8 is admitted prior art: chunking, index files, media players, and network delivery. '013 Patent, 1:21-31. Claim 8 recites no hardware beyond "the network." Similarly, claim 1 adds only a generic "server"; and claim 15 recites no hardware at all. Claim 8's ordered combination—"receive," "determine," "generate," "provide," "repeat"—is the abstract idea recited in sequence, each step abstract individually and together. *Two-Way Media*, 874 F.3d at 1339; *BSG*, 899 F.3d at 1290.

The Complaint asserts the invention can reduce "preprocessing" and "storage," Compl. ¶¶77, 80, and enables "dynamic chunking," *id.* ¶81. But claim 8 requires no change to how media is encoded, chunked, or stored; "separately-addressable segments" already exist and the claim merely lists them. '013 Patent, 1:21-31. Nor does claim 8 require what Adeia touts, Compl. ¶79—different manifests for different devices or personalized advertisements—and a claim that can be "practiced without the alleged inventive concept" fails Step Two. *Berkeley*IEOR v. W.W. Grainger, Inc.*, Nos. 2024-2353, 2025-1009, 2026 WL 2820069 at *4 (Fed. Cir. Sept. 21, 2026). The Federal Circuit affirmed Rule 12(b)(6) dismissal of video-streaming claims said to solve the technical problem of "conserving bandwidth while preserving data" when "the claims themselves," as here, fail to describe *how* this is achieved. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). The Complaint's assertion that the ordered combination "was not well-understood, routine, or conventional," Compl. ¶82, is a conclusion that cannot defeat dismissal, *Simio*, 983 F.3d at 1365, and its appeal to industry praise, Compl. ¶83, is "not enough for eligibility," *SAP*, 898 F.3d at 1163.

#### c) *Claim 8 is representative, and all claims of the '013 Patent fall together.*

Independent claim 1 recites a generic "server" performing the ineligible method of claim 8. Independent claim 15 adds only determining and providing Universal Resource Indicators ("URIs") for a requested chunk, an abstract result without an inventive concept. *Elec. Power*, 830 F.3d at 1353-56. The dependent claims merely layer on additional abstract ideas. For example, selecting the "media other than the media file" based on user "information," "preferences," or "behavior," or "a time of day" (claims 6-7, 13-14, 20)

is targeted content delivery—the same customized content practice held abstract in *Capital One,* 792 F.3d at 1369-71, and reaffirmed in *Customedia*, 951 F.3d at 1364-65. Creating, storing, and transmitting reporting data about playback (claims 2-5, 10-12, 17-19) is the quintessential abstract idea—collecting and transmitting information, even when limited to particular content. *Elec. Power*, 830 F.3d at 1353-56. And generating an "indicator" for a segment "to be created dynamically" (claims 9, 16) recites a result without a mechanism. *Two-Way Media*, 874 F.3d at 1337. All claims are thus "substantially similar and linked to the same abstract idea," *Content Extraction*, 776 F.3d at 1348, and Adeia—charting only claim 8—identifies no distinctive significance in any other claims or limitations, *Berkheimer*, 881 F.3d at 1365.

#### 5. The '546 Patent Claims the Abstract Idea of Controlling Access to Streaming Content Based on an Account's Active Session (Count II).

The '546 Patent, titled "Global access control for segmented streaming delivery," addresses an abstract business problem, not a technical one. The specification explains that authentication was conventionally "performed when the user device initially begins streaming," ECF No. 1-2 ("'546 Patent"), 1:28-32. The asserted problem is that, after that initial check, "a single user account could, perhaps fraudulently, be used for access to media assets from multiple user devices"—"a particular issue where a subscription … is required to access the media assets." *Id.*, 1:35-41. In other words: account sharing reduces subscription revenue. Sole asserted and representative claim 8 recites a "computer system" comprising a "network interface," a "memory," and a "processor" configured to:

> **cause transmission** of a media asset to a first user device to commence ...;
>
> **receive** during transmission of the media asset to the first user device, beaconing data from the first user device;
>
> **store** session information linked with the first user device and the user account ... [that] indicates the first user device and the user account have an active session ...; and
>
> **control access** by any additional user devices linked with the user account to one or more streaming media assets at least while the session information ... indicates the user account has the active session ....

*Id.*, cl. 8.

#### *a) Step One: Claim 8 is directed to the abstract idea of controlling access to streaming content based on an account's active session.*

Controlling access to a service based on usage rules is neither technical in nature nor novel in application. Businesses have enforced exactly these kinds of rules for as long as there have been memberships: the video-rental clerk who checks whether the membership card already has a tape out; the gym whose card admits one person at a time; etc. The Federal Circuit has held claims directed to "controlling access to, or limiting permission to, resources" abstract, *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326-28 (Fed. Cir. 2020), as well as claims for controlling access to protected resources using identity and authentication data, *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016-17 (Fed. Cir. 2017); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346-50 (Fed. Cir. 2021); *see Piranha*, 2026 WL 3072347 at *3-6 ("controlling access to data" to protect advertising revenue is abstract). The monitoring portion of the claim—receiving "beaconing data" and storing "session

information"—is the abstract practice of collecting and recording usage information. *Elec. Power*, 830 F.3d at 1353-54.

The claim does not describe *how* access is controlled. The "controlling" limitation is purely functional and result-driven: the processor "control[s] access" by additional devices "at least while the session information ... indicates" an active session. Like the claims in *Universal Secure Registry*, claim 8 "simply recite[s] conventional actions in a generic way." 10 F.4th at 1349; *see Affinity Labs*, 838 F.3d at 1258-62. The claimed "beaconing data" is undefined and cannot supply a technical focus: the specification explains that beaconing data may simply be *inferred from the device's ordinary requests for segments and index files*—traffic that exists in every streaming system. '546 Patent, 10:47-65. Checking session information to enforce a business rule using generic components is not an *Enfish* improvement. *Compare Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017) *with* '546 Patent, 13:46-65.

#### ***b) Step Two: Generic components performing generic functions supply no inventive concept.***

Claim 8 adds only a "network interface," a "memory," and a "processor"—the same generic computer components held insufficient in *Alice* itself, where "electronic recordkeeping," obtaining data, and issuing automated instructions were "well-understood, routine, conventional activit[ies]." 573 U.S. at 225-26. Receiving status data, storing a session record, and ceasing or permitting transmission are basic computer functions; the specification concedes the segmented-streaming environment and initial authentication were conventional. *See* '546 Patent, 1:17-34, 5:50-6:21. The "ordered

combination"—monitor, record, restrict—is the abstract idea restated in sequence. *See BSG*, 899 F.3d at 1290.

The Complaint's assertion that this combination "was not well-understood, routine or conventional," Compl. ¶69, is a legal conclusion contradicted by the intrinsic record, and the Court need not accept it. *Secured Mail*, 873 F.3d at 912-13. While the Complaint lauds "gaining information on the status of the media player via inference"—inferring a pause from request timing, a skip from a non-sequential request, a stop from a timeout, Compl. ¶70—claim 8 recites no inference at all. The system "receive[s] ... beaconing data," however generated and in any form. Likewise, the Complaint's description of withholding "subsequent index files" as the enforcement mechanism, *id.* ¶72, appears nowhere in claim 8, which says only "control access." So too the "architectural separation" theory, *id.* ¶¶65-66: claim 8 requires no unified system, and claims 9 and 11 recite a separate "content provider computer system." Allegations of unconventionality that rest on unclaimed features cannot save the claims. *ChargePoint*, 920 F.3d at 769-70; *Simio*, 983 F.3d at 1364-65.

#### ***c) Claim 8 is representative, and all claims of the '546 Patent fall together.***

Method claim 1 and computer-program-product claim 16 recite the same access-control steps as system claim 8 and "fail for substantially the same reasons." *Alice*, 573 U.S. at 226-27. Transmitting credentials to and receiving an authorization response from a "content provider computer system" before streaming (as in claims 2-3, 5, 9, 11, 17-18) recites the "abstract idea of controlling access to resources," which the Federal Circuit has "repeatedly found unpatentable." *Ericsson*, 955 F.3d at 1326-28 (citing *Prism*, 696 F.

App'x at 1017); *see also Universal Secure Registry*, 10 F.4th at 1346-50. Denying access to and ceasing transmission to a "first user device," as well as authorizing a "second user device" (claims 1, 3-4, 10, 12-13, 19-20) merely restate the access-control rule that *is* the abstract idea and so cannot supply an inventive concept. *BSG*, 899 F.3d at 1290. Limiting the asset to "a video accessible via a subscription" (claims 6, 14) is a field-of-use limitation, *Affinity Labs*, 838 F.3d at 1258-59, and encrypting the transmitted segments (claims 7, 15) is a "well-understood, routine, conventional" computer function and "an application of the abstract idea of encryption itself," *Checksum Ventures, LLC v. Dell Inc.*, 412 F. Supp. 3d 906, 919 (N.D. Ill. 2019). All claims are thus "substantially similar and linked to the same abstract idea," *Content Extraction*, 776 F.3d at 1348, and Adeia—charting only claim 8—identifies no distinctive significance in any other claims or limitations, *Berkheimer*, 881 F.3d at 1365.

#### 6. No Claim-Construction or Factual Dispute Precludes Resolution of Any Patent Now.

Anticipating this Motion, the Complaint attempts to plead eligibility at length. Compl. ¶¶53-60, 64-74, 77-84, 87-92, 95-100. But the asserted claims cannot be salvaged by recounting benefits that flow from the abstract ideas themselves or appending the talismanic conclusion that the "ordered combination" was "not well-understood, routine, or conventional" or represented "a specific technological solution." *Id.* ¶¶58, 69, 82, 99. Conclusory assertions of that kind are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679, and cannot manufacture a *Berkheimer* fact issue—particularly where, as here, the specifications themselves describe the claimed components as "typical[]." *Secured Mail*, 873 F.3d at 912-13; *Simio*, 983 F.3d at 1365;

*see Berkheimer*, 881 F.3d at 1368 ("not every § 101 determination contains genuine disputes over the underlying facts"); *Piranha*, 2026 WL 3072347 at *6 (rejecting complaint's "conclusory rephrasing" of "alleged technological problems and technological solutions"). Nor has Adeia identified any claim term whose construction bears on eligibility. Defendants are aware of none, and this Motion accepts Adeia's own characterizations of the claims *arguendo*. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360-62 (Fed. Cir. 2023) (patentee must propose a construction and explain how it changes the analysis).

## IV. CONCLUSION

The Court should dismiss the Complaint with prejudice. Each Count rests on claims invalid under 35 U.S.C. § 101, a defect not curable by amendment. *Sanderling*, 65 F.4th at 705-06; *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (dismissal with prejudice proper where amendment would be futile).

Dated: November 4, 2026

Respectfully submitted,

*/s/ C. Stephen Maule*
C. Stephen Maule
(Tex. Bar No. 24102160)
steve.maule@bakerbotts.com
Ali Dhanani
(Tex. Bar No. 24055400)
ali.dhanani@bakerbotts.com
Zacharias E. Shepard
(Tex. Bar No. 24131664)
zach.shepard@bakerbotts.com
Brian J. Hausman
(Tex. Bar No. 24136892)
brian.hausman@bakerbotts.com

BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

Kurt M. Pankratz
(Tex. Bar No. 24013291)
kurt.pankratz@bakerbotts.com
Griffin Tolle
(Tex. Bar No. 24115349)
griffin.tolle@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Ave., Ste. 900
Dallas, TX 75201
Telephone: (214) 953-6500
Facsimile: (214) 953-6503

Jamie R. Lynn
(D.C. Bar No. 987740)
jamie.lynn@bakerbotts.com
BAKER BOTTS L.L.P.
700 K St., N.W.
Washington, DC 20001
Telephone: (202) 639-7700
Facsimile: (202) 639-7890

**COUNSEL FOR DEFENDANTS DISH NETWORK CORPORATION; DISH NETWORK L.L.C.; DISH MEDIA SALES L.L.C.; DISH DBS CORPORATION; ECHOSTAR CORPORATION; SLING TV L.L.C.; and SLING TV HOLDING L.L.C.**

**CERTIFICATE OF CONFERRAL (CNS Civ. Practice Standard 7.1B(b))**

Pursuant to CNS Civ. Practice Standard 7.1B(b), undersigned counsel for Defendants conferred with counsel for Plaintiffs by videoconference on November 2, 2026 regarding the relief requested in this Motion, including whether the asserted deficiencies are correctable by amendment. Plaintiffs stated that they will oppose the motion in its entirety. Defendants' position is the Asserted Patents' claims are directed to patent ineligible material are therefore invalid under 35 U.S.C. § 101, that ineligibility turns on the claims themselves and not the pleaded facts, and that this deficiency cannot be cured by amendment.

*/s/ C. Stephen Maule*
C. Stephen Maule

**CERTIFICATE OF COMPLIANCE (D.C.COLO.LPtR 17)**

I hereby certify that the foregoing brief contains 7,102 words, exclusive of the caption, signature block, and certificates, and otherwise complies with the type and word-count limitations of D.C.COLO.LPtR 17 (Arial 12-point font, double spaced).

*/s/ C. Stephen Maule*
C. Stephen Maule

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2026, the foregoing was filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record via the Notice of Electronic Filing pursuant to D.C.COLO.LCivR 5.1(d).

*/s/ C. Stephen Maule*
C. Stephen Maule